_____
                                    )
ARROWOOD INDEMNITY COMPANY,          )
formerly known as ROYAL INDEMNITY    )
COMPANY, successor-in-interest to    )
GLOBE INDEMNITY COMPANY,             )
                                    )
          Plaintiff,                 )
                                    )  CIVIL NO. 1:13-12298-PBS
     v.                              )
                                    )
OXFORD CLEANERS AND TAILORS, LLC,    )
OXFORD CLEANERS, INC., ARTHUR        )
HOVAGIMIAN, individually and doing   )
business as OXFORD CLEANERS, and     )
BARBARA HOVAGIMIAN,                  )
                                    )
          Defendants.                )
_____     )

## MEMORANDUM AND ORDER

August 15, 2014

SARIS, Chief Judge,

Oxford Cleaners & Tailors LLC ("Oxford"), a dry-cleaning business, seeks defense costs and indemnity for litigation in which the business is accused of contaminating a neighboring property with hazardous pollutants. Arrowood Indemnity Company ("Arrowood") seeks a declaratory judgment that it has no duty to defend or indemnify under the "pollution exclusion" in the insurance policy. The parties filed cross-motions for summary judgment. After hearing, Arrowood's motion for summary judgment is **ALLOWED**, and Oxford's motion is **DENIED**.

## FACTUAL BACKGROUND

The following facts are undisputed, except where noted. Oxford[1] has owned and operated a dry-cleaning business in Easton, Massachusetts since the early 1970s. It also owns the property where the dry-cleaning facility operates. D&D Realty owns a nearby property which was allegedly contaminated by the dry-cleaning business.

Arrowood, formerly known as Royal Indemnity Company, is the successor-in-interest to Globe Indemnity Company, which provided liability insurance coverage to Oxford from October 1987 through October of either 1993 or 1994 (the dates are disputed). The coverage was renewed annually. The alleged contamination of D&D's property is believed to have occurred during or prior to the years when the policy was in effect.

## I. Pollution Claims Against Oxford

An investigation of environmental contamination at the D&D property revealed elevated levels of petroleum and chlorinated solvents, including perchloroethylene ("PCE"), in groundwater samples. D&D notified the Massachusetts Department of Environmental Protection ("DEP") of the contamination, and the DEP subsequently issued a Notice of Responsibility ("NOR") to D&D on October 26, 2011.

---

[1] The Court refers to the individual and corporate defendants collectively as Oxford.

D&D told the DEP that Oxford's facility was the likely source of PCE. On December 30, 2011, the DEP issued to Oxford a NOR and Request for Immediate Response Action Plan ("RIPAP"). The NOR/RIPAP stated that the DEP "has reason to believe that [Oxford is] a Potentially Responsible Party" for the "release and/or threat of release of oil and/or hazardous material at the [D&D] property," because "[g]roundwater elevation and analytical data indicates that the chlorinated solvents are likely migrating from your property." The NOR/RIPAP directed Oxford to investigate the contamination of D&D's property and take steps to rectify it. After receiving the NOR/RIPAP, Oxford forwarded the documents to Arrowood on February 8, 2012, requesting defense costs and indemnity under the insurance policy. On March 9, 2012, Arrowood responded to Oxford's letter by declining coverage, citing the policy's pollution exclusion.

On March 1, 2012, D&D sent a Demand Letter to Oxford, stating that "the PCE release appears to be related to and migrating from your upgradient property." The demand letter asserted that Oxford was liable under § 5A of the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. Laws ch. 21E § 5, and sought damages and response costs.

On April 25 and May 16, 2012, Oxford again contacted Arrowood to request defense and indemnity under the policy's

Personal Injury provision, and to notify Arrowood of D&D's Demand Letter. Arrowood again refused to defend or indemnify in a letter sent to Oxford on June 25, 2012. On July 20, 2012, Oxford sent Arrowood another letter requesting coverage, which Arrowood denied in its August 14, 2012 response.

D&D sent Oxford a Final Settlement Demand letter in January 2013, and ultimately initiated litigation, serving an eight-count complaint on Oxford in July 2013. Count IV of D&D's complaint is labeled "TRESPASS," and alleges that Oxford, "through the historical, continued and periodic releases, and migration of hazardous materials, impermissibly and wrongfully entered into and continued to enter the [D&D] Property causing substantial property damages including but not limited to requiring the Plaintiff to vacate its premises to protect inhabitants from Imminent Hazard conditions and take Immediate Response Action Measures."

Count V is labeled "PRIVATE NUISANCE," and alleges that Oxford "created a nuisance through its negligent actions and/or omissions resulting in the historic release, continued and periodic releases and migration of hazardous materials from [Oxford's] Site onto [D&D's] Property, which materially impairs [D&D's] reasonable use and enjoyment of the property. . . . Defendants are liable under the common law of nuisance for all damages incurred by [D&D], and are further required to compensate

[D&D] for the costs to abate said nuisance, for property damages, for economic losses, for diminution in value, consequential damages, consultant fees and attorneys fees." Count VI alleges negligence.

## II. The Instant Litigation

On August 16, 2013, Arrowood agreed to defend Oxford in the D&D lawsuit, subject to Arrowood's statement that it does not believe it has a duty to defend or indemnify Oxford in that matter, and subject to a reservation of rights to deny coverage insofar as the D&D lawsuit "does not allege 'Personal Injury' as that term is defined under the Arrowood Policies and/or to the extent that the Absolute Pollution Exclusion operates to bar coverage." Arrowood did not agree to defend or indemnify Oxford with regard to the DEP NOR/RIPAP. Oxford subsequently notified Arrowood of its position that the duty to defend and indemnify commenced with the receipt of the NOR. Arrowood responded on October 23, 2013, that it would defend Oxford only in connection with the D&D lawsuit, starting from the date Arrowood received notice of the D&D complaint.

Arrowood filed this action in September 2013, seeking a declaratory judgment stating that it does not have a duty to defend or indemnify Oxford in connection with either the DEP investigation or the D&D lawsuit. Oxford counterclaimed for declaratory judgment, and also alleges that Arrowood has breached

the insurance contract and engaged in deceptive business

practices in violation of Mass. Gen. Laws ch. 93A.

**III. The Insurance Policy**

   **A. The Pollution Exclusion**

   The insurance policy provides general liability coverage

for "bodily injury" and "property damage." Section II, Part One

states:

> If a claim is made or SUIT is brought against an
> INSURED for BODILY INJURY OR PROPERTY DAMAGE, caused by
> an OCCURRENCE to which this coverage applies, WE will:
> a. pay damages for which the INSURED is legally liable
> up to the Limit of Insurance; and
> b. provide a defense at OUR expense by counsel of OUR
> choice. We will do this even if the allegations of the
> SUIT are not true. WE may investigate or settle any
> claim or SUIT as we see fit. But after WE have paid the
> applicable Limit of Insurance, WE are not required:
> (1) to pay any settlement or judgment; or
> (2) defend any SUIT.

The policy defines property damage as either "physical

injury to tangible property, which occurs during the policy

period, including the loss of the use of that property," or "loss

of use of tangible property which has not been physically injured

if the loss of use results from physical injury to tangible

property which occurs during the policy period." <u>Id.</u>

   The policy also contains the following so-called "pollution

exclusion":

> Section II, Coverage A, Part One, General Liability is
> amended as follows:
> Item B. "Exclusions"
> . . . WE do not cover:
> a. Bodily Injury or Property Damage arising out of the

6

actual, alleged, or threatened discharge, dispersal, release or escape of pollutants;
(1) at or from any premises owned, rented or occupied by YOU;
(2) at or from any site or location used by or for YOU or others for the handling, storage, disposal, processing or treatment of waste;
(3) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for YOU or any person or organization to whom YOU may be legally responsible; or
(4) at or from any site or location on which YOU or any contractors or subcontractors working directly or indirectly on YOUR behalf are performing operations:
a) if the pollutants are brought on or to the site or location in connection with the operations; or
b) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants; and
b. any loss, cost, or expense arising out of any government direction or request that YOU test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste.

**B. Personal Injury Provision**

Part Two of the policy concerns "personal injury" and

"advertising injury," and states:

If a claim is made or a SUIT is brought against an INSURED for PERSONAL INJURY or ADVERTISING INJURY which arises out of the conduct of YOUR BUSINESS within the COVERAGE TERRITORY, WE will:
1) pay damages for which the INSURED is legally liable up to the Limit of Insurance; and
2) provide a defense at OUR expense by counsel of OUR choice. We will do this even if the allegations of the SUIT are not true. WE may investigate or settle any claim or SUIT as WE see fit. But after WE have paid the applicable Limit of Insurance, WE are not required:
a. to pay any settlement or judgment; or
b. defend any SUIT.

7

The policy defines personal injury as "injury which arises out of one or more of the following acts committed during the policy period: false arrest, detention or imprisonment; malicious prosecution; <u>wrongful entry into or eviction of a person from a room, dwelling or premises which the person occupies</u>; libel, slander or invasion of privacy which is the result of a written or spoken statement." Joint Stipulation of Facts, Ex. A (emphasis added).

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986) (internal quotation marks omitted). To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." <u>Rogers v. Fair</u>, 902 F.2d 140, 143 (1st Cir. 1990), <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). "Once the moving party has properly supported its motion . . . ., the burden shifts to the non-moving party who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a

genuine issue for trial.'" <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 37 (1st Cir. 1995), quoting <u>Liberty Lobby</u>, 477 U.S. at 248. The court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour</u>, 63 F.3d at 36.

Where, as here, both parties have moved for summary judgment, the Court "must consider each motion separately, drawing inferences against each movant in turn." <u>Equal Emp't Opportunity Comm'n v. S.S. Clerks Union, Local 1066</u>, 48 F.3d 594, 603 n.8 (1st Cir. 1995). The Court may not "decide any significant issues of material fact" on cross-motions for summary judgment. <u>Boston Five Cents Sav. Bank v. Sec'y of the Dep't of Hous. and Urban Dev.</u>, 768 F.2d 5, 11-12 (1st Cir. 1985).

## II. Arrowood's Motion for Summary Judgment

### A. Duty to Defend

#### 1. D&D Demand Letter & Lawsuit

Under Massachusetts law, to determine whether an insurer has a duty to defend, "a comparison must be made of the facts alleged in the underlying complaint with the insurance policy provisions. 'If the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer has a duty to defend.'" <u>Essex Ins. Co. v. BloomSouth Flooring Corp.</u>, 562 F.3d 399, 403 (1st Cir. 2009) (internal quotation marks omitted), citing <u>Herbert A.</u>

Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003); Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997). The duty to defend "is based on the facts alleged in the complaint and those facts which are known by the insurer." Boston Symphony Orchestra, Inc. v. Commercial Union Co., 545 N.E.2d 1156, 1158 (Mass. 1989). The Court must ask "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Essex, 562 F.3d at 404, quoting Hazen Paper Co. v. United States Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990).

In asserting that an insurer has a duty to defend, "[t]he insured initially bears the burden of showing that the allegations in the underlying complaint fit within the covered risks in the policy." Essex, 562 F.3d at 404, citing Highlands Ins. Co. v. Aerovox, Inc., 676 N.E.2d 801, 804 (Mass. 1997). "Once the insured has satisfied this burden, it falls to the insurer to prove the applicability of one or more separate and distinct exclusionary provisions. . . . Both determinations – whether an allegation creates the possibility of a covered claim, and whether an exclusion applies to relieve an insurer of its duty to defend – depend on whether the insured would have reasonably understood the exclusion to bar coverage." Essex, 562 F.3d at 404 (internal citations and quotation marks omitted). "Summary judgment for an insurance company is proper 'when the

allegations in the underlying complaint lie expressly outside the policy coverage and its purpose.'" Essex, 562 F.3d at 403, quoting Herbert, 788 N.E.2d at 531.

Arrowood contends that there is no duty to defend because the underlying claim against Oxford involves the unintentional release and migration of pollutants, for which the policy's pollution exclusion forecloses coverage. Oxford does not dispute that PCE is a pollutant, or that the pollution exclusion precludes coverage under the Property Damage provision of the policy. There is no allegation that the pollution was intentional. Instead, Oxford argues that the allegations in D&D's demand letter and complaint are covered by the Personal Injury provision of the insurance policy, which states that the insurer will defend and indemnify the insured for a claim or suit alleging, among other things, "wrongful entry into or eviction of a person from a room, dwelling or premises which the person occupies." D&D's complaint includes a claim for trespass, in which D&D alleges that "through the historical, continued and periodic releases, and migration of hazardous materials, [Oxford] impermissibly and wrongfully entered into and continued to enter the Property, causing substantial property damages . . ." Joint Stipulation, Ex. P. According to Oxford, D&D's trespass claim triggers coverage as a "wrongful entry" under the policy's personal injury provision.

Oxford relies primarily on two cases in which an insurer was held obligated to defend an insured for claims arising out of incidents that would otherwise have come squarely within an insurance policy's pollution exclusion: <u>Titan Holdings Syndicate, Inc. v. City of Keene, N.H.</u>, 898 F.2d 265 (1st Cir. 1990), and <u>High Voltage Eng'g Corp. v. Liberty Mut. Ins. Co.</u>, Civ. No. 90-00566 (Mass. Dist. Ct. 1992).

In <u>Titan Holdings</u>, the city of Keene was sued for "damage allegedly caused by the City's operation of a sewage treatment plant." <u>Id.</u> at 266. The plaintiffs in the underlying suit set forth claims of trespass and nuisance, alleging that they were "'continuously bombarded by and exposed to noxious, fetid and putrid odors, gases and particulates, to loud and disturbing noises during the night, and to unduly bright night lighting' emanating from the City's sewage treatment plan which abuts their land." <u>Id.</u> at 267. Titan Holdings, which issued insurance policies to the city, sought a declaratory judgment that the pollution exclusion in its insurance policy relieved it of any duty to defend or indemnify. <u>Id.</u>

The defendants in <u>Titan Holdings</u> argued that the suit against them was covered under the Personal Injury section of the insurance policy, which covered claims for "wrongful entry or eviction or other invasion of the private right of occupancy." <u>Id.</u> at 271. Examining New Hampshire law, the First Circuit held

that "wrongful entry" encompassed a claim only for <u>intentional</u> trespass, which the underlying claim did not allege. <u>Id.</u> at 272. According to the court, a negligent entry onto land involving pollutants could not constitute a "wrongful entry" because it lacked "the 'constructive intent' necessary to support a trespass action." <u>Id.</u> at 272, citing <u>Moulton v. Groveton Papers Co.</u>, 289 A.2d 68, 72 (N.H. 1972). However, the court ultimately held that the more broadly-worded phrase "other invasion of the right of private occupancy" did encompass negligent, unintentional trespasses of the sort suggested by the suit against the defendants. <u>Titan Holdings</u>, 898 F.2d at 272-73. On that basis, the court held that the insurer had a duty to defend. <u>Id.</u> at 273.

In light of that analysis, Oxford's reliance on <u>Titan</u> hits an iceberg. The court did hold that the insurer had a duty to defend what was essentially a pollution claim under the policy's personal injury provision. However, the decision turned not on the term "wrongful entry" - which the court expressly held did <u>not</u> equate to the kind of unintentional trespass alleged - but rather on the phrase "other invasion of the private right of occupancy." <u>Id.</u> at 272-73. That phrase does not appear in the Arrowood policy's more narrowly confined definition of personal injury, which covers only "wrongful entry into or eviction of a person from a room, dwelling or premises which the person occupies."

Oxford's remaining citation has low voltage for the same reason. In <u>High Voltage</u>, a Massachusetts Superior Court held that Liberty Mutual had a duty to defend the plaintiff against a suit alleging that High Voltage, a manufacturing company operating on a subdivided parcel of land, committed a "negligent release of cleaning solvents" that resulted in contamination of "the subsurface soil, groundwater, and bedrock of [another portion of] the property" with "tetrachloreothene and trichloreothene." <u>High Voltage</u>, No. 90-00566, slip op. at 2-3. Like the policy in <u>Titan Holdings</u>, the Liberty Mutual personal injury provision covered "any injury arising out of . . . wrongful entry or eviction or <u>other invasion of the right of private occupancy</u>." <u>Id.</u> at 7 (emphasis added). Relying on <u>Titan Holdings</u>, and noting that "an interference with the right of private occupancy requires neither an intentional act nor a physical intrusion," <u>id.</u> at 9, the court held that Liberty Mutual had a duty to defend the plaintiff. Again, the decision was not based on the "wrongful entry" language that lies at the heart of this case.

Applying Massachusetts law in <u>Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.</u>, 91 F.3d 278 (1st Cir. 1996), which had facts very similar to those here, the First Circuit construed "wrongful entry" much the same way it did in <u>Titan Holdings</u>. In <u>Dryden</u>, Worcester Trust sued property lessee Dryden Oil Company, alleging that there had been "spills or releases of oil,

14

industrial lubricants, and/or hazardous material during the transfer, storing, mixing and manufacturing process" at the time Dryden occupied the property, which "resulted in severe contamination from 'oil and/or hazardous material.'" Id. at 281. Dryden sought defense and indemnity from Travelers Indemnity Company under the "personal injury" provision of its insurance policy, which covered wrongful entry. Id. at 285.

The court held that "wrongful entry" did not embrace the underlying claim, which was characterized as one for trespass, for two reasons: 1) "the wrongful conduct comprehended by the 'personal injury' coverage afforded under policies like the present one amounts to an intentional tort under Massachusetts law," and 2) "the Massachusetts tort of wrongful entry has yet to be extended beyond trespasses by landlords upon the leased premises." Id. at 286-87, citing Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991) (holding that a similarly-worded personal injury provision covered "certain intentional acts").

At first blush, Titan Holdings and Dryden appear to doom any argument that the term "wrongful entry" in the personal injury provision of an insurance policy could encompass unintentional torts.

However, subsequent to Titan Holdings and Dryden, the Massachusetts Appeals Court held that wrongful entry and trespass

are equivalent under Massachusetts law. <u>Dilbert v. Hanover Ins.</u>
<u>Co.</u>, 825 N.E.2d 1071, 1077 (Mass. App. Ct. 2005) (interpreting
the personal injury provision of an insurance policy and holding
that "trespass equates to wrongful entry"). In <u>Dilbert</u>, the
plaintiffs sought defense and indemnification from their
insurance company in a dispute over a condominium parking space.
<u>Id.</u> at 1073. The plaintiffs "determined that [the condominium
seller] no longer had any claim to the parking space, and that
they were free to use it. [The seller] disagreed and demanded
that they cease its use[, but] the plaintiffs failed to comply. .
. ." <u>Id.</u> at 1074. The seller sued the plaintiffs for trespass,
and the court held that "a claim for simple trespass will support
the insureds' demand that the insurer owes a duty of defense
against the underlying complaint." <u>Id.</u> at 1075.

The court in <u>Dilbert</u> expressly repudiated <u>Dryden</u>'s holding
that "wrongful entry" only applies to landlord-tenant law. <u>Id.</u> at
1076.[2] Further, in the context of analyzing the separate issue of
whether the insurance policy's use of the word "occurrence"
covered only accidental wrongful entries, the Appeals Court

---

[2] "Although the court in <u>Dryden</u> stated that 'Massachusetts
case law has defined the tort of wrongful entry only in the
context of an intrusion by the landlord upon the premises leased
by its tenant,'. . . we note that our appellate courts have not
had the opportunity to distinguish wrongful entry and trespass in
any meaningful way. The few Massachusetts appellate decisions
that employ the term 'wrongful entry' do not restrict it to
landlord-tenant situations . . . ." <u>Dilbert</u>, 825 N.E.2d. at 1076
(citation omitted).

16

recognized that "[a]mong the varieties of actionable trespass to land . . . are intentional and negligent forms," and that the term "'wrongful entry' . . . fails to make any distinction between the intentional and unintentional forms." <u>Id.</u> at 1078. As such, <u>Dilbert</u> casts some doubt on the continued viability of <u>Titan Holdings</u> and <u>Dryden</u>. But because <u>Dilbert</u> involved trespass into a parking spot, not pollution, it does not answer the precise questions here: (1) whether an unintentional wrongful entry triggers the coverage for personal injury, and if so (2) whether the pollution exclusion in Part One of the policy trumps the coverage for personal injury for wrongful entry in Part Two, when the alleged injury is caused by the migration of pollutants. Both questions are close.

<u>Dryden</u> expressly held that the wrongful conduct that triggered personal injury coverage "amounts to an intentional tort under Massachusetts law." 91 F.3d at 286-87. It came to this conclusion even though it recognized that "trespass is not necessarily an intentional tort under Massachusetts law." <u>Id.</u> at 286. This interpretation makes sense here. The Arrowood policy section defining "personal injury" lists wrongful entry alongside a host of other torts which all require intent: malicious prosecution, false imprisonment, libel, slander, and invasion of privacy. "[U]nder the contract interpretation canon of <u>noscitur a sociis</u>, the meaning of a word is or may be known by the words

accompanying or surrounding it." Great Am. Ins. Co. v. Riso,

Inc., Civ. No. 04-12260, 04-12397, 2006 WL 4158730, at *4 (D.

Mass. Mar. 31, 2006). While Dilbert held that wrongful entry

under Massachusetts law may include negligent trespass, it did

not address the import of the policy provision's context, which

had the term "wrongful entry" embedded in a similar listing of

intentional torts. Rather it was grappling with whether an

intentional wrongful entry could be an occurrence. Accordingly, I

conclude that Dryden is still good law and interpret the term

"wrongful entry" in light of the words around it, which indicate

that only intentional torts are covered by the personal injury

provision. A claim of negligent trespass is insufficient to

trigger coverage under the personal injury provision.

The second question is also hard. Circuit courts are split

on whether pollution exclusions for bodily injury and property

damage may also be read to exclude coverage under a policy's

personal injury provision. The Seventh Circuit and Eleventh

Circuits have held that a "pollution exclusion clause [which], by

its terms, applies only to the policy's property damage and

bodily injury provisions," cannot defeat coverage for pollution-

related claims that "arguably fall[] within the scope of [the

policy's] personal injury coverage." Pipefitters Welfare Educ.

Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1042 (7th Cir.

1992) (applying Illinois law, holding that insurer had a duty to

defend plaintiff in underlying suit alleging negligence in connection with a chemical spill under the "other invasion of the right to private occupancy clause"); see also Scottish Guar. Ins. Co. v. Dwyer, 19 F.3d 307, 311-12 (7th Cir. 1994) (similarly applying Wisconsin law, holding that insurer was obligated to defend insured in suit claiming damages for property damage and ingestion of contaminated water as a result of chemical releases); City of Delray Beach, Fla. v. Agric. Ins. Co., 85 F.3d 1527, 1533-35 (11th Cir. 1996) (applying Florida law, holding that, generally, a pollution exclusion that does not expressly apply to a personal injury provision will not bar coverage of environmental contamination, but declining to find a duty to defend because the underlying pollution claim did not fit the definition of any of the provision's enumerated risks, including "wrongful entry").

The First Circuit did not consider "whether the absolute pollution exclusion applies to the personal injury liability coverage under Massachusetts law," since it concluded that the personal injury liability coverage under the policy did not apply. Dryden, 91 F.3d at 286. In contrast, the Fifth, Sixth, and Ninth Circuits have held that a personal injury provision cannot serve as the basis for coverage of pollution-related claims that otherwise come within the ambit of the pollution exclusion. Those courts have concluded that, while there is a "theoretical

19

possibility that the [personal injury provision], if read standing alone, might provide coverage, . . . when read in the context of the entire insurance policy, coverage would contradict the clear pollution exclusion for damage to real property." Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1023 (6th Cir. 1995) (applying Michigan law, holding that a policy's personal injury provision did not cover suit for TCE release because of the pollution exclusion); Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co., 172 F.3d 702, 705-06 (9th Cir. 1999) (applying California law, declining to find a duty to defend under an insurance policy's "personal injury" provision where the underlying suit alleged land and water contamination); Gregory v. Tennessee Gas Pipeline Co., et al., 948 F.2d 203, 207 (5th Cir. 1991) (applying Louisiana law, holding that pollution exclusion precluded duty to defend under personal injury provision for suit alleging chemical contamination of lake).

In situations involving unintentional releases of pollutants, the more persuasive appellate authority disfavors allowing an insured to use a policy's personal injury provision to circumvent the pollution exclusion and obtain coverage for chemical releases. In light of the pollution exclusion, a reasonable insured would not understand the wrongful entry provision to have been intended to cover the harm that results to property interests from pollution. Dryden, 91 F.3d at 285. Under

Massachusetts law, "[a] contract is to be construed to give reasonable effect to each of its provisions." <u>J.A. Sullivan Corp. v. Commonwealth</u>, 494 N.E.2d 374, 378 (Mass. 1986). "A reading rendering contract language meaningless is to be avoided." <u>Cohen v. Steve's Franchise Co.</u>, 927 F.2d 26, 29 (1st Cir. 1991). While the pollution exclusion in the Arrowood policy is appended only to the property damage section, the Court does not read the provisions of an insurance policy in a vacuum, but rather considers them in the context of the entire contract. Because D&D's claim alleges contamination of its property by substances clearly established as pollutants, an insured would have to do a pretzel-twist logically to believe on the one hand that Oxford was not entitled to coverage under the 'bodily injury' and 'property damage' sections of the policy because coverage is barred by the pollution exclusion, yet on the other hand believe he should receive coverage for the same risk under the personal injury liability coverage afforded by the policy. To do so would "render . . . the pollution exclusion a dead appendage to the policy." <u>Lakeside</u>, 172 F.3d at 705.

Accordingly, I hold that in light of the policy's pollution exclusion and the personal injury provision's delineated application to intentional torts, the term "wrongful entry" is not reasonably susceptible of an interpretation that would cover the unintentional migration of contaminants like PCE. An

21

objectively reasonable insured would have expected the pollution exclusion to bar coverage for D&D's suit against Oxford, and would not have anticipated coverage of that same claim by the personal injury provision.

## 2. NOR/RIPAP

The Supreme Judicial Court has suggested that the issuance of an NOR by a government environmental agency may trigger an insurer's duty to defend. See Hazen Paper, 555 N.E.2d at 584 (holding that the Environmental Protection Agency's letter to the insured, which included a claim for cleanup costs incurred due to the release of hazardous substances, was equivalent to a "suit" within the insurance policy's duty to defend provision). The NOR/RIPAP at issue did not obligate Arrowood to pay Oxford's defense or response costs because - like the D&D demand letter and complaint - the NOR/RIPAP at most alleges the unintentional migration of contaminants, which is not covered under the personal injury provision of the policy.

## B. Duty to Indemnify

"If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify." Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999). Arrowood is not obligated to indemnify Oxford or otherwise pay any of the

response costs associated with the DEP NOR/RIPAP or the D&D lawsuit.

### III. Oxford's Motion for Summary Judgment

Because Arrowood does not have a duty to defend Oxford in connection with the NOR/RIPAP or the D&D Realty lawsuit, Arrowood has not breached any provision of the insurance contract. Further, an insurance carrier "which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A." <u>Gulezian v. Lincoln Ins. Co.</u>, 506 N.E.2d 123, 127 (Mass. 1987). Arrowood's interpretation was not merely plausible, but likely correct. Oxford's motion for summary judgment on its declaratory judgment, breach of contract, and Ch. 93A claims is **<u>DENIED</u>**.

**<u>ORDER</u>**

The Court **<u>ALLOWS</u>** Plaintiff's Motion for Summary Judgment (Docket No. 23), and **<u>DENIES</u>** Defendants' Motion for Summary Judgment (Docket No. 26).


           /s/ PATTI B. SARIS
           PATTI B. SARIS
           United States District Judge